No. 12-2203

IN THE

# United States Court of Appeals
# for the Fourth Circuit

2315 ST. PAUL STREET, LLC,

*Plaintiff–Appellant*,

v.

HARTFORD FIRE INSURANCE COMPANY,

*Defendant–Appellee*.

On Appeal from the United States District Court
for the District of Maryland

## BRIEF OF APPELLEE

Steven M. Klepper
Mary Beth Smith
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030
(410) 539-1269 (facsimile)
Email: sklepper@kg-law.com
      msmith@kg-law.com
*Counsel for Appellee Hartford Fire
Insurance Company*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Pursuant to FRAP 26.1 and Local Rule 26.1, Hartford Fire Insurance Company, who is the Appellee, makes the following disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held entity? **NO.**

2.    Does party/amicus have any parent corporations? **YES.**

      If yes, identify all parent corporations, including grandparent and great-grandparent corporations: **Hartford Fire Insurance Company is a wholly owned subsidiary of The Hartford Financial Services Group, Inc., which is a publicly traded company.**

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **YES.**

      If yes, identify all such owners: **Hartford Fire Insurance Company is a wholly owned subsidiary of The Hartford Financial Services Group, Inc., which is a publicly traded company.**

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? **NO.**

5.    Is party a trade association? **NO.**

6.    Does this case arise out of a bankruptcy proceeding? **NO.**

                                    /s/ *Steven M. Klepper*
                                    Attorney for Appellant

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS ................................................................................ i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ......................................................... iv

PREFATORY STATEMENT ..........................................................1

ISSUES PRESENTED FOR REVIEW ..............................................2

STATEMENT OF FACTS ...............................................................2

    A. Farooq, Sheikh, and the LLCs ...........................................2

        1. Farooq's 2007 Representations That He Was a Principal of Red Canyon ....................................................................2

        2. Sheikh's Service as Hartford's Point of Contact with Insured ..............3

        3. Sheikh's June 20, 2008 EUO Testimony That Farooq Owned Both LLCs, and That Sheikh Was Authorized to Act on Behalf of the Insured ........................................................4

        4. Farooq's January 11, 2010 Execution of Agreement as "Red Canyon Representative" ...................................................7

        5. The Insured's January 27, 2010 Filing (Through Present Counsel) of Sheikh's Affidavit as Its Authorized Representative .........7

        6. Farooq and Sheikh's December 6, 2010 Signatures on Behalf of Both LLCs ...................................................................8

    B. EUO Testimony Regarding the Loss ....................................9

SUMMARY OF ARGUMENT .......................................................13

ARGUMENT ................................................................................15

I.   THE EXCLUSION FOR DISHONEST OR CRIMINAL ACTS ...................15

    A. Standard of Review .........................................................15

    B. Law Governing the "Dishonest or Criminal Acts" Exclusion ...................17

    C. Appropriateness of Summary Judgment ..............................19

        1. Farooq's Insufficient Assertion of a "Contractual, Arms-Length" Relationship Between the Insured and Red Canyon ...........................19

            a. The District Court's Unchallenged Actual Holding ......................20

b.   The Insured's Arguments Regarding Actual Authority ..................22

c.   Alternatively, Sheikh's Apparent Authority .....................................26

d.   Irrelevancy of Insured's Contentions Under Actual Policy Language .......................................................................................29

2.   Applicability of Exclusion to "the Property," Not Merely to "Chattel" ...................................................................................30

3.   Entrustment of the Building to Bradford...............................................33

4.   Bradford's Responsibility for the Loss ................................................35

II.  CONDITIONS OF COVERAGE ........................................................................38

A.  Standard of Review .........................................................................................38

B.  Examination Under Oath .................................................................................38

C.  Notice to the Police and Hartford ...................................................................40

1.   Undisputed Decision by Insured Not to Provide Notice in 2007 ..........40

2.   Insufficiency of Excuse for Failure to Provide Notice in 2007 ............41

3.   Prejudice to Hartford ............................................................................42

III. CLAIM UNDER "GOOD FAITH" STATUTE ...................................................46

A.  Standard of Review .........................................................................................46

B.  Failure on the Merits.......................................................................................47

CONCLUSION ..........................................................................................................49

STATEMENT RESPECTING ORAL ARGUMENT ..............................................50

CERTIFICATE OF COMPLIANCE ........................................................................51

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. Gen. Cas. Ins. Co.*, 935 A.2d 746 (Md. 2007)..............................26, 39

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................... 23-24, 26

*Anne Arundel Cnty. v. Hartford Acc. & Indem. Co.*,
621 A.2d 427 (Md. 1993) .................................................................................19

*Barr v. Lexington Cnty. Sch. Dist. Three*,
347 F. App'x 952 (4th Cir. 2009) ....................................................................15

*Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*,
625 A.2d 1021 (Md. 1993) ...............................................................................30

*C & H Plumbing & Heating, Inc. v. Employers Mut. Cas. Co.*,
287 A.2d 238 (Md. 1972) ..........................................................................*passim*

*Century Indem. Co. v. Schmick*, 88 N.W.2d 622 (Mich. 1958)...............................18

*Commercial Union Ins. Co. v. Porter Hayden Co.*,
698 A.2d 1167 (Md. Ct. Spec. App. 1997).......................................................42

*Cooney v. Nationwide Mut. Ins. Co.*,
2011 WL 198600 (Ohio Ct. App. Jan. 13, 2011) .............................................30

*Cougar Sport, Inc. v. Hartford Ins. Co. of the Midwest*,
737 N.Y.S.2d 770 (App. Div. 2000)..................................................................33

*Covenant Media of S.C., LLC v. City of N. Charleston*,
493 F.3d 421 (4th Cir. 2007) .....................................................................16, 38

*CSX Transp., Inc. v. Commercial Union Ins. Co.*,
82 F.3d 478 (D.C. Cir. 1996)............................................................................42

*David R. Balogh, Inc. v. Pa. Millers Mut. Fire Ins. Co.*,
307 F.2d 894 (5th Cir. 1962) .....................................................................29, 35

*Dickerson v. Longoria*, 995 A.2d 721 (Md. 2010) .......................................... 27-28

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ......................... 46-47

*Edwards v. Ranger Ins. Co.*, 456 S.W.2d 419 (Tex. Civ. App. 1970) ...................41

*Estate of Collins v. Geist*, 153 P.3d 1167 (Idaho 2007) .......................................23

*Evans v. Maryland*, 914 A.2d 25 (Md. 2006) .......................................................32

*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996) ..... 16, 20-21

*F.D. Stella Prods. Co. v. Gen. Star Indem. Co.*,
   2005 WL 3436388 (N.D. Ill. Dec. 12, 2005)..................................................30, 33

*Green v. H & R Block, Inc.*, 735 A.2d 1039 (Md. 1999)....................................22, 27

*Hartford Fin. Servs. Group, Inc. v. Cleveland Pub. Library*,
   168 F. App'x 26 (6th Cir. 2006) ........................................................................41

*Henneghan v. Signet Constr. Co.*, 332 F. App'x 144 (4th Cir. 2009) ....................15

*Himelfarb v. Hartford Fire Ins. Co.*,
   718 A.2d 693 (Md. Ct. Spec. App. 1998)...........................................................43

*Howell v. Harleysville Mut. Ins. Co.*, 505 A.2d 109 (Md. 1986) ...........................35

*Hunt v. Nuth*, 57 F.3d 1327 (4th Cir. 1995)..........................................................15

*Ins. Co. of N. Am. v. Miller*, 765 A.2d 587 (Md. 2001).........................................22

*Jackson v. Kimel*, 992 F.2d 1318 (4th Cir. 1993).............................................16, 38

*Klein v. Weiss*, 395 A.2d 126 (Md. 1978)...............................................................28

*Lewis v. Commercial Cas. Ins. Co. of Newark, N. J.*,
   121 A. 259 (Md. 1923) .......................................................................................41

*Lewis v. I.N.S.*, 194 F.3d 539 (4th Cir. 1999) ........................................................15

*Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566 (Md. 1997)........................ 17-18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ..................................38

*Methodist Health Sys. Found., Inc. v. Hartford Fire Ins. Co.*,
   834 F. Supp. 2d 493 (E.D. La. 2011)..................................................................29

*Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 921 A.2d 245 (Md. 2007) .......... 17-18

*Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331 (4th Cir. 2000) ............................. 20-21

*N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*,
   413 F. App'x 574 (4th Cir. 2011) .......................................................................15

*Old Colony Ins. Co. v. Moskios*, 120 A.2d 678 (Md. 1956)...................................19

*P. Flanigan & Sons v. Childs*, 248 A.2d 473 (Md. 1968) .......................................28

*Patapsco Female Inst. v. Rock Hill Coll.*, 51 Md. 470 (1879) ...............................32

*Phillips v. Allstate Indemn. Co.*,
   848 A.2d 681 (Md. Ct. Spec. App. 2004)...........................................................39

*Plantation Pipeline Co. v. Royal Indem. Co.*,
   537 S.E.2d 165 (Ga. Ct. App. 2000)............................................................. 41-42

*Powell v. U.S. Fid. & Guar. Co.*, 88 F.3d 271 (4th Cir.1996)................................39

*Prince George's Cnty. v. Local Gov't Ins. Trust,*
859 A.2d 353 (Md. Ct. Spec. App. 2004)...........................................43

*Prince George's Cnty. v. Local Gov't Ins. Trust,*
879 A.2d 81 (Md. 2005) .................................................. 43-45

*Reid v. Angelone*, 369 F.3d 363 (4th Cir. 2004) ....................................32

*Rossi v. Douglas*, 100 A.2d 3 (Md. 1953) .........................................32

*Schafler v. HSBC Bank USA*, 381 F. App'x 282 (4th Cir. 2010) ...........................15

*Suggs v. Stanley*, 324 F.3d 672 (8th Cir. 2003) ....................................45

*United States ex rel. Becker v. Westinghouse Savannah River Co.,*
305 F.3d 284 (4th Cir. 2002) ...................................... 16-17

*United States v. Cruz-Diaz*, 550 F.3d 169 (1st Cir. 2008)....................................45

*United States v. Wilson*, 107 F.3d 774 (10th Cir. 1997).........................................45

*Wagner v. Edemnify, LLC,*
2009 WL 5062058 (E.D. Tex. Dec. 16, 2009) ............................30, 33

*Washington v. Fed. Kemper Ins. Co.,*
482 A.2d 503 (Md. Ct. Spec. App. 1984).........................................43

*Westfield Ins. Co. v. Sheehan Constr. Co., Inc.,*
564 F.3d 817 (7th Cir. 2009) ............................................47

*Winzer v. EHCA Dunwoody, LLC,*
627 S.E.2d 426 (Ga. Ct. App. 2006)........................................23

*W.K. & E.K. v. Encompass Indem. Ins. Co.,*
Case No. 27-1001-13-00002 (Md. Ins. Adm. Apr. 29, 2013) ...........................48

*Woldford v. Landmark Am. Ins. Co.*, 474 S.E.2d 458 (W. Va. 1996) ....................33

*Wright v. Maryland*, 708 A.2d 316 (Md. 1998).........................................32

## **Statutes and Rules**

Fed. R. App. P. 28........................................................46

Fed. R. App. P. 34........................................................50

Fed. R. Civ. P. 56....................................................*passim*

Fed. R. Civ. P. 59 ................................................ 16-17, 22, 25

Fed. R. Evid. 104 ........................................................16

Fed. R. Evid. 602 ...................................................................16, 37

Fed. R. Evid. 801 ........................................................................16

Fed. R. Evid. 1002 .......................................................................24

Fed. R. Evid. 1003 .......................................................................24

Fed. R. Evid. 1004 .......................................................................24

Md. Code, Bus. Occ. & Prof. § 10-206 .........................................23

Md. Code, Corps. & Ass'ns § 4A-203 ...........................................23

Md. Code, Corps. & Ass'ns § 4A-401 ...........................................22

Md. Code, Cts. & Jud. Proc. § 3-1701 ...................................... 47-48

Md. Rule 2-132 ........................................................................ 8-9

Md. R. Prof'l Conduct 3.3 ...........................................................28

Md. R. Prof'l Conduct 4.1 ...........................................................28

N.Y. Ltd. Liab. Co. Law § 202 .....................................................23

## **Other Authorities**

Restatement (Second) of Agency (1958) ...................................... 27-28

Webster's Third New Int'l Dictionary (1981) ................................. 32-33

# PREFATORY STATEMENT

Hartford Fire Insurance Company ("Hartford") issued a builder's risk policy to 2315 St. Paul Street, LLC ("the Insured") with respect to the renovation of the Land Bank Building in Baltimore, Maryland. This appeal turns primarily on the policy's exclusion for "[d]ishonest or criminal acts by you … or anyone else to whom you entrust the property for any purpose."

The Insured overlooks the actual basis for the District Court's holding. The record is replete with uncontroverted documentary evidence that Ibrahim Sheikh and Red Canyon Properties, LLC ("Red Canyon") acted as the Insured's authorized agent in entrusting the building to Basil Bradford. Mohammad Farooq's conclusory affidavit was legally insufficient to overcome this documentary proof.

The Insured alternatively seeks to rewrite the exclusion, contrary to Maryland law on contract construction generally and on the intent of this exclusion—to bar coverage for risk of theft by persons who, because of familiarity with a premises, are better able to steal from that premises. Knowledgeable witnesses testified that such a person, Bradford, was the culprit. Farooq cannot rebut that evidence by professing lack of personal knowledge. His speculation, if accepted, would merely establish prejudice to Hartford's investigation resulting from Farooq's deliberate four-month delay in reporting the theft to Hartford and the police. This Court should affirm.

1

## ISSUES PRESENTED FOR REVIEW

1.     Did the District Court correctly reject the Insured's conclusory affidavit and attempts to rewrite the terms of Exclusion 2.h?

2.     Alternatively, should this Court affirm summary judgment based on the Insured's breaches of policy conditions?

3.     Does the Insured, through a single sentence that does not cite the record or any authority, present any cognizable basis to revive its "good faith" claim?

## STATEMENT OF FACTS

The Insured's Statement of Facts draws almost exclusively from Farooq's affidavit. Opening Brief of Appellant ("Br.") at 3-9. Farooq mostly disclaimed personal knowledge and failed to account for substantial contradictory testimony from witnesses with personal knowledge. *J.A. 274-80*. A review of the actual summary judgment record establishes that there is no genuine dispute of material fact.

### A.     Farooq, Sheikh, and the LLCs

#### 1.     Farooq's 2007 Representations That He Was a Principal of Red Canyon

Six months before the loss, on May 23, 2007, Farooq, on behalf of a to-be-formed borrower entity, agreed to the terms of a $15 million bridge loan for the renovation of the Land Bank Building. *J.A. 107-08.* Farooq signed the commitment

letter, *J.A. 107*, which identified the "Sponsor(s)" and "Guarantor(s)" as "Mohammed Farooq, Principal, Red Canyon Properties." *J.A. 108*.

One month after the loss, on December 10, 2007, Farooq submitted that signed agreement as an exhibit to his pleadings in an action against him by the lender in the United States District Court for the District of Massachusetts. *J.A 106-17* (showing ECF date-stamp in D. Mass. Civ. No. 07-11317).

## 2. Sheikh's Service as Hartford's Point of Contact with Insured

The policy at issue, 30 MSF IO2492 (8/10/2007–8/10/2008) ("Policy"), listed the "Named Insured and Mailing Address" as "2315 ST PAUL STREET LLC, C/O RED CANYON PROPERTIES, 211 E. LOMBARD ST., STE 280, BALTIMORE, MD 21202." *J.A. 50*.

When Hartford inspected the loss on March 11 and 26, 2008, Sheikh was present at the site to meet with Hartford's adjuster. *J.A. 145-47*. In the course of adjusting the loss, Hartford addressed its coverage correspondence to "Mr. Ibrahim Sheikh, 2315 St. Paul Street, LLC c/o Red Canyon Properties." *J.A. 209-13*. This correspondence to Sheikh appeared in the documents that the Insured produced from its files in discovery. *Id.* (produced by Insured as P-00031 to P-00035). *See J.A. 197* (documents labeled "P-00001" were those produced by Insured).

**3.    Sheikh's June 20, 2008 EUO Testimony That Farooq Owned Both LLCs, and That Sheikh Was Authorized to Act on Behalf of the Insured**

By letter dated May 27, 2008, addressed to "Mr. Ibrahim Sheikh, 2315 St. Paul Street, LLC c/o Red Canyon Properties," Hartford's attorney requested an examination under oath ("EUO"):

> Pursuant to the terms of **your insurance policy** Hartford has requested that we conduct **your** examination under oath, and subject to your availability we have scheduled the examination for Tuesday, June 10, 2008 …. At that time, and again consistent with **your duties under the relevant insurance policy**, you should bring with you and produce for inspection and copying the *original* contracts between you and Basil Bradford, as well as any correspondence or other documents relating in any way to the work performed by Mr. Bradford and/or his employees at the property in question.

*J.A. 213* (boldface added). In discovery in this action, the Insured produced this letter from its files. *Id.* (labeled P-00035).

Sheikh's EUO proceeded on June 10, 2008. *J.A. 85*; *S.A. 1*.[1] The Insured's then-attorney, Stephen Weber, Esquire, attended the EUO. *S.A. 3*; *J.A. 87*. Sheikh testified, without objection or correction by Weber, that, notwithstanding any formal distinctions between Red Canyon and the Insured, Sheikh was testifying as the Insured's authorized representative:

Q. You are employed by who, sir?

---

[1] Although labeled a "Joint Appendix," the volume filed on March 27, 2013 was a unilateral submission by the Insured. References to "S.A." are to the Supplemental Appendix filed by Hartford on April 29, 2013.

A. By Red Canyon Properties.

Q. Now, Red Canyon Properties, is that an L.L.C. or a –

A. Yes.

Q. It's actually an L.L.C.?

A. Red Canyon Properties, L.L.C.

Q. Then we have the 2315 Saint Paul Street, L.L.C. I take it that entity was set up for the specific purpose of the renovation at the address.

A. Yes, to purchase the property at the address.

Q. But Red Canyon, L.L.C. is the sole owner of the Saint Paul Street company?

A. I believe Mohammad Farooq is the sole owner …

Q. Does he own the L.L.C. individually?

A. Yes.

Q. So what is the relationship between – if there is one between Red Canyon Properties, L.L.C. and Saint Paul Street L.L.C.?

A. Mohammed Farooq is the single member of both L.L.C.s. He owns both.

Q. But Red Canyon doesn't own 2315 Saint Paul Street?

A. I believe Stephen [Weber] did the op – I believe in the operating agreement that it's under – I believe it's under Mohammad Farooq. I don't believe Red Canyon owns …

Q. The reason that I ask you that question is that on the policy it is listed as 2315 Saint Paul Street, L.L.C., trading as Red Canyon Properties.

A. Trading.

Q. So is that used as a trade name as well?

A. Yes. When we do all our contracts, everything goes under Red Canyon properties.

Q. Ultimately, though, you individually are employed by 2315 Saint Paul or Red Canyon?

A. Red Canyon.

Q. So you get a pay check from Red Canyon?

A. Yes.

**Q. Is it fair to say though that you are authorized to act on behalf of the Saint Paul Street L.L.C.?**

**A. Yes.**

**Q. And you are here able to do that today?**

**A. Yes.**

*S.A. 6-8* (emphasis added).

Sheikh testified regarding the basis for his extensive knowledge of Farooq's business dealings and the LLCs: "I have known [Farooq] for pretty much my whole life." *S.A. 14*. He worked with Farooq in New York prior to becoming employed with Red Canyon in 2007. *S.A. 10*. "[In] January [2007], I was officially employed by Red Canyon. We started purchasing property in Baltimore[.]" *S.A. 11*. As of 2008, they had "about ten different project[s] running" in Baltimore, each set up as a separate LLC. *S.A. 11*. When asked if he held a job title, Sheikh testified: "Nobody in our company officially has titles." *S.A. 12*.

#### 4.   Farooq's January 11, 2010 Execution of Agreement as "Red Canyon Representative"

On January 11, 2010, Red Canyon executed a Conditional Waiver and Release agreement with Castle Sprinkler and Alarm, Inc. ("Castle Sprinkler") with respect to work on the Land Bank Project. *J.A. 97.* Farooq signed the agreement as "Red Canyon Representative." *Id.*

#### 5.   The Insured's January 27, 2010 Filing (Through Present Counsel) of Sheikh's Affidavit as Its Authorized Representative

On January 27, 2010, the Insured moved for summary judgment in an asbestos lawsuit filed against it by the Maryland Department of the Environment in the Circuit Court for Baltimore City. *J.A. 131-40.* Sheikh was the Insured's affiant in support of the motion. *J.A. 139-40.* Sheikh identified himself as the Insured's authorized representative, and he testified regarding the Insured's institutional knowledge:

1. My name is Ibrahim Sheikh ….

2. I am over 18 years of age and competent to testify as to the facts contained herein.

3. **I am an authorized representative of 2315 St. Paul Street, LLC, ("St. Paul") regarding the property at interest in the above-captioned case.**

4. The facts in this matter are fairly straight forward. As part of the property/entity acquisition, several environmental reports were obtained indicating that extensive asbestos removal was conducted at the Land Bank in the early 1990s. **It was St. Paul's understanding**

from these reports that if asbestos remained in the building, it would
be in the basement or the penthouse.

*J.A. 139* (emphasis added).

Sheikh signed the affidavit under penalty of perjury on January 15, 2010.

*J.A. 140.* The Insured's present counsel, Anthony Gorski, Esquire, signed the

Insured's motion submitting (and relying upon) Sheikh's affidavit. *J.A. 137.*

Also in the same litigation, Mr. Gorski, as attorney for 2315 Saint Paul

Street LLC (a different Farooq LLC that did not abbreviate "Saint"), *J.A. 124-29*,

submitted an affidavit from Sheikh demonstrating detailed knowledge of Farooq's

knowledge and intentions with respect to corporate matters. *J.A. 129* ("In 2007 …

Farooq formed the entity 2315 Saint Paul Street LLC to be the owner of the

Property. However, Mr. Farooq learned that at that time, it was financially

beneficial to purchase 100% interest in an LLC that already owned the Property,

2315 St. Paul Street LLC.").

## 6. Farooq and Sheikh's December 6, 2010 Signatures on Behalf of Both LLCs

In litigation filed by Castle Sprinkler against the Insured, *see* Facts § A.4,

the firm of Hodes, Pessin & Katz filed a motion to withdraw as defense counsel.

*J.A. 99*, *J.A. 102-04.* Attached to that motion was a Md. Rule 2-132 letter to

Farooq and Sheikh, countersigned by them, stating:

We hereby consent to the withdrawal of … Hodes, Pessin & Katz, P.A. as counsel for 2315 St. Paul Street, LLC and Red Canyon Properties, LLC as stated herein.

RED CANYON PROPERTIES, LLC

 *[Farooq's signature]*              *[Sheikh's signature]*
By: Mohammad Ali Farooq        Ibrahim Sheikh

12/6/10
Date

2315 ST PAUL STREET, LLC

 *[Farooq's signature]*              *[Sheikh's signature]*
By: Mohammad Ali Farooq        Ibrahim Sheikh

12/6/10
Date

*J.A. 104*. *See* Md. Rule 2-132(b) ("the motion shall be accompanied by the clients' written consent to the withdrawal").

### B.    EUO Testimony Regarding the Loss

Sheikh testified at his EUO that the Insured purchased the Land Bank Building in June 2007. *S.A. 14*. A metal recycling company recommended Basil Bradford for cutting and salvaging metal. *S.A. 18-19*.

Red Canyon and Bradford executed the original Contractor Agreement on October 15, 2007. *J.A. 160-62*; *S.A. 25*. Section III defined the "Scope of Work" as follows: "Remove and cut all excess plumbing pipes, steam pipes, cooling tower on the roof, boilers in sub-basement and other items **as instructed by the**

**architect and owner**." *J.A. 160* (emphasis added); *J.A. 298*. Section VII, "Site Maintenance," required Bradford to "take reasonable steps to secure the Property against casualty, loss, and vandalism including, but not limited to, locking all external doors and closing and locking all windows when not physically present at the Property[.]" *J.A. 161*; *J.A. 298-99*.

Sheikh and Bradford walked through the site to mark items to be removed. *S.A. 29-30*. Bradford and his employees began work immediately upon signing the contract on October 15, 2007. *S.A. 32*. The contract required completion by November 15, 2007. *Id.*

Sheikh personally gave Bradford keys to access the Land Bank Building. *S.A. 33*. It was for that reason that the contract required Bradford to secure the property. *S.A. 33-34*. From October 15 to October 26, 2007, Sheikh would visit the site on weekdays, though he was not always present when Bradford accessed the building in the morning or when Bradford left in the evening. *S.A. 33-36*.

On October 26, 2007, Sheikh left for New York and then for Pakistan. *S.A. 35-36*. Sheikh did not return until November 25, 2007. *S.A. 36*. While Sheikh was away, no contractors other than Bradford were working at the building. *S.A. 39-40*. From October 26, 2007 to November 20, 2007, the only people with access to the building were Bradford and Juan Osorio, Red Canyon's senior draftsman. *S.A. 13*; *S.A. 40*.

Osorio spoke to Sheikh on November 20, 2007 to inform Sheikh of the loss. *S.A. 38*. *See S.A. 105-06*. Osorio immediately changed the locks at Sheikh's request. *S.A. 38-39*. There were no signs of forced entry. *S.A. 40-41*.

Sheikh did not call the police. *S.A. 37-38*. Instead, Sheikh told Bradford to meet him on November 26, 2007. *S.A. 38*. Bradford gave Sheikh "a long story" about problems with his employees over the prior weeks. *S.A. 45*.

Sheikh and Farooq spoke with their counsel and decided not to make an insurance claim at that time:

> Mr. Farooq and I spoke to **our counsel**. We went with a quick estimate of what we thought – I thought, in my opinion, the damage was at that time, which I thought it was only the staircase, the board room, minor electrical stuff, were the issues that we came across, and **we did have the idea of a claim**. Then we said, "Let's speak to Mr. Bradford about the issues," and we came to an agreement. **Our counsel** said that if we could get a contract agreement with Mr. Bradford, we would have some sort of way to move forward.

*S.A. 70-71* (emphasis added).

Attorney Weber drafted a second contract, executed December 20, 2007, between Red Canyon and Bradford. *S.A. 52*; *J.A. 217-18*. Key terms included:

> 1. The Parties agree that and Mr. Basil Bradford accepts [sic] **solely responsible** for damage to [sic] done to the Property. This damage, includes but is not limited to, the **theft** of wood trim from the board room, damage to the wood trim in the board room, the **theft** of brass railings from the interior stairwells, the **theft** of light fixtures from the interior stairwells, **theft** and damage to the fuse boxes and electrical system, **theft** and damage to the fire suppression system, **theft** and damage to electrical switches and outlets throughout the building, **theft** and damage to elevator controls, **theft** and damage to

light fixtures in the lobby, and trash and debris left throughout the building. This is not an inclusive list, **further damage could be discovered**.

2.  The Parties agree and acknowledge that there was a contract in place for the removal of certain specified items from the Property. Mr. Bradford acknowledges that he breached this contract by failing to remove all the property and causing the damage listed in clause 1.

3.  Mr. Bradford will take certain steps [sic] effect the repair and or replacement of the damage done to the property. These steps are set forth below.

4.  In consideration. of these steps, Red Canyon Properties, LLC will refrain from pursuing civil or **criminal sanctions** against Mr. Bradford and will make no claim to his insurance broker. If Mr. Bradford fails to fulfill his obligation under this contract, Red Canyon Properties, LLC reserves the right to pursue whatever steps are necessary to rectify its injury.

*J.A. 217* (emphasis added).

Bradford did not fulfill his duties under the second contract, which required completion by January 4, 2008. *S.A. 59-62*. Sheikh permitted Bradford to continue to perform work in January and February 2008, because "I thought that there was a chance that he would deliver on his promises, and I wanted to give him the opportunity instead of going through the legal route." *S.A. 64*. Sheikh or Osorio supervised that work. *S.A. 67*. In late February or early March 2008, upon receiving electrical estimates that revealed the extent of the theft of wiring from the building, Sheikh and Farooq decided to fire Bradford. *S.A. 65*; *S.A. 75-76*. At that point, "we knew that we would have to go the insurance route and go for a claim." *S.A. 65*.

Sheikh reported the theft to Hartford in early March 2008. *S.A. 68*. *See J.A. 142* (claim file opened March 7, 2008). Sheikh also called the police to report the theft on March 10, 2008. *S.A. 46-47*. The police prepared a report but did not contact Sheikh further. *S.A. 52*.

In late March or early April 2008, Bradford contacted Sheikh to say "he wanted to bring in the fire hose, but at that time, we already started the claim process." *S.A. 63*. Sheikh responded that "we have already started the claim process, and I don't know what type of hose he was bringing. I said, 'Don't worry about the hose.'" *Id.*

Sheikh testified that he "continue[d] to believe that Mr. Bradford [with his workers] is responsible for all the damage[.]" *S.A. 71-72*. Mr. Osorio, whose EUO Hartford took on August 5, 2008, confirmed Sheikh's testimony that "Bradford had a key to the building," *S.A. 100*, and that there were no signs of forcible entry. *S.A. 107*. Osorio agreed "that Mr. Bradford and his employees did the damage to the Land Bank building," and that he had no "reason to believe that anyone else could have done any of the damage[.]" *S.A. 127*.

## SUMMARY OF ARGUMENT

**I.** The Insured fails to confront the undisputed record evidence on which the District Court expressly relied. Extensive evidence established that Sheikh and Red Canyon were acting on the Insured's behalf at all relevant times, including when

Sheikh entrusted the building to Bradford, and when Sheikh testified at his EUO. Farooq's conclusory assertion of a "contractual, arm's length" relationship, without producing the contracts, is legally insufficient to avoid summary judgment. The Insured's alternative efforts to rewrite the terms "entrust" and "the property" contravene basic principles of contract construction and Exclusion 2.h's established purpose, as declared by Maryland's highest court. Finally, the Insured cannot, through an affidavit disclaiming personal knowledge, assert some metaphysical doubt as to whether Bradford committed the theft. The documentary evidence and testimony from knowledgeable witnesses, including by Sheikh as the Insured's representative, establishes that Bradford (who had a key and unsupervised access) is the only person who could have committed the theft (which did not involve forcible entry).

**II.** Alternatively, the Insured's contentions in opposing summary judgment on Exclusion 2.h would, if accepted, establish breaches of the Policy's conditions of coverage. First, Hartford's EUO notice, sent to Red Canyon per the Insured's instructions, unambiguously requested Sheikh's EUO in his capacity as the Insured's representative. If the Insured never provided an EUO, as it now contends, then it materially violated the Policy's EUO clause. Second, if some doubt exists as to the perpetrator's identity, such uncertainty would result in substantial part from

the Insured's deliberate four-month delay in reporting the loss to Hartford and the police.

**III.** Finally, the Insured's one-sentence argument regarding the Maryland "good faith" statute is insufficient to preserve that claim, which overlooks Hartford's extensive investigation and Hartford's reasonable declination (with which the District Court agreed). This Court should affirm.

## ARGUMENT

## I.    THE EXCLUSION FOR DISHONEST OR CRIMINAL ACTS

### A.    <u>Standard of Review</u>

To preserve a claim for review, an appellant's brief must address the actual basis for the District Court's holding. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 413 F. App'x 574, 578 (4th Cir. 2011); *Schafler v. HSBC Bank USA*, 381 F. App'x 282, 282 (4th Cir. 2010); *Barr v. Lexington Cnty. Sch. Dist. Three*, 347 F. App'x 952, 952 (4th Cir. 2009); *Henneghan v. Signet Constr. Co.*, 332 F. App'x 144, 145 (4th Cir. 2009). A reply brief is too late to raise an argument. *Lewis v. I.N.S.*, 194 F.3d 539, 547 (4th Cir. 1999); *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995).

Although this Court reviews a District Court's ultimate grant of summary judgment *de novo*, not all rulings underlying that grant are subject to plenary review. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A District Court has considerable leeway on that question. Fed. R. Evid. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness … or the admissibility of evidence shall be determined by the court …. In making its determination it is not bound by the rules of evidence[.]"); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed. R. Evid. 801(d)(2) (requiring factual determination as to whether a declarant was authorized to make an admission on behalf of a party). This Court reviews the District Court's evidentiary rulings only for an abuse of discretion, and the factual determinations underlying those evidentiary rulings only for clear error. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (cited by District Court at *J.A. 302*).

This Court may, on plenary review, affirm summary judgment on any ground apparent from the record, so long as the non-movant had a fair opportunity to brief the matter. *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007); *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993).

The District Court's denial of the Insured's Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, *J.A. 415-16*, would, if challenged, be reviewable only for an abuse of discretion. *United States ex rel. Becker v. Westinghouse Savannah*

*River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). But the Insured's opening brief does

not challenge the District Court's discretionary ruling or cite the materials attached

to the Rule 59(e) motion. *J.A. 327-407.*

### B.    Law Governing the "Dishonest or Criminal Acts" Exclusion

Exclusion 2.h of the Policy provides in full:

2.    We will not pay for "loss" caused by or resulting from any of the
      following[:]

      h.    Dishonest or criminal acts by you, any of your partners,
            employees including leased employees, directors, trustees,
            authorized representatives or anyone else to whom you entrust
            the property for any purpose.

            This exclusion applies whether the persons referred to above
            are acting alone or in collusion with others or whether or not
            the loss occurs during the hours of employment.

            This exclusion does not apply to property entrusted to carriers
            for hire or to acts of destruction by your employees. Theft by
            employees is not covered.

*J.A. 76-78.*

Maryland courts construe insurance policies "according to contract

principles, because a policy of insurance is a contract." *Moscarillo v. Prof'l Risk*

*Mgmt. Servs., Inc.*, 921 A.2d 245, 251 (Md. 2007). Consequently:

Construction of insurance contracts in Maryland is governed by a few
well-established principles. An insurance contract, like any other
contract, is measured by its terms unless a statute, a regulation, or
public policy is violated thereby. To determine the intention of the
parties to the insurance contract, which is the point of the whole
analysis, we construe the instrument as a whole. Maryland Courts

should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution.

*Id*. (quoting *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 569 (Md. 1997)).

*C & H Plumbing & Heating, Inc. v. Employers Mut. Cas. Co.*, 287 A.2d 238 (Md. 1972), applied these principles to an "all risks" policy's exclusion for "[l]oss caused by infidelity of an officer or employee of the insured whether such person is acting alone or in collusion with others or by infidelity of persons to whom the insured property is entrusted." *Id.* at 239. "[T]hree individuals who had worked for [the policyholder] from 7:15 a.m. to 4:00 p.m." returned to the policyholder's building after hours, broke into the building through a second-story window, and "removed copper wire, copper parts, and tubing said to have had a value in excess of $10,000." *Id.* Maryland's highest court rejected the policyholder's contention that the perpetrators were not acting as "employee[s] of the insured" if the theft occurred after the work day had ended. *Id.* at 239-40 (rejecting *Century Indem. Co. v. Schmick*, 88 N.W.2d 622 (Mich. 1958)).

*C & H Plumbing* identified the purpose for the exclusion: the increased risk associated with theft by persons, like employees, who "would have more familiarity with the surroundings and, therefore, be better able to steal" from the premises. *Id.* at 241. *C & H Plumbing* found "the word 'employee' in the context in which it is used would be understood by the average, ordinary individual as including the persons responsible for the thievery here. He would regard them as

employees after quitting time as well as during their working day." *Id.* at 241. A Maryland court has "no right to relieve one of the parties from disadvantageous terms by process of interpretation nor may we make a new contract under guise of construction." *Id.* at 239.

"'One usually gets in this life only what he pays for. Insurance coverage is no exception.'" *Id.* at 241-42 (quoting *Old Colony Ins. Co. v. Moskios*, 120 A.2d 678, 685 (Md. 1956) (Hammond, J., dissenting)). The Insured did not purchase a fidelity bond from Hartford, *see Anne Arundel Cnty. v. Hartford Acc. & Indem. Co.*, 621 A.2d 427, 428 (Md. 1993), but rather a builder's risk policy with a valid and enforceable "dishonest or criminal acts" exclusion. Its repeated appeals to public policy, based on its characterization of the Policy as "all risks," ignores that the Policy defines "Covered Causes of Loss" to exclude "those causes of 'loss' listed in the Exclusions." *J.A. 74*. *See C & H Plumbing*, 287 A.2d at 239 (construing "all risks" policy). It thus "becomes unhorsed when it attempts to ride the unruly public policy horse to justify its complaint." *Anne Arundel Cnty.*, 621 A.2d at 433.

### C. <u>Appropriateness of Summary Judgment</u>

#### 1. **Farooq's Insufficient Assertion of a "Contractual, Arms-Length" Relationship Between the Insured and Red Canyon**

The Insured seeks to distance itself from Sheikh and Red Canyon for two purposes: to deny that Red Canyon was acting on its behalf in entrusting the Land

Bank Building to Bradford, and to avoid treatment of Sheikh's testimony as party admissions. Its contentions fail both for the reasons stated by the District Court and for other reasons apparent from the record.

### a. *The District Court's Unchallenged Actual Holding*

The District Court held that a "nonmoving party may not … withstand summary judgment by offering a conclusory, self-serving affidavit that is without corroboration." *J.A. 302* (citing *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000), and *Evans*, 80 F.3d at 962). It identified eight instances of documentary evidence (*J.A. 304-05*) contradicting Farooq's conclusory assertions that the Insured's "only relationship to [Red Canyon] is via a contractual, arms-length transaction," and that Sheikh was not the Insured's authorized representative. *J.A. 276*. The District Court expressly cited and considered Farooq's affidavit—including Farooq's uncorroborated explanations for the documentation of Farooq holding himself out as Red Canyon's authorized representative and of Sheikh holding himself out as the Insured's authorized representative. *J.A. 306*.

The District Court found, however, that under this Court's precedents "Farooq failed to present evidence sufficient to create a genuine dispute concerning St. Paul's entrustment of the property to Bradford." *J.A. 306*. It explained:

> In this case, the record is replete with undisputed evidence that St. Paul and Red Canyon are interwoven entities, thereby imputing the

acts of Red Canyon to St. Paul. Perhaps most persuasive on this issue is the loan document listing Mr. Farooq as a principal of Red Canyon [*J.A. 107-08*], the conditional waiver and release signed by Mr. Farooq as a representative of Red Canyon [*J.A. 97*], the two affidavits in other matters attesting to Mr. Sheikh's position as a representative of St. Paul [*J.A. 139-40*, *J.A. 129*], and the Developer Fee Agreement that utilizes Red Canyon's address for both St. Paul and Mr. Farooq [*J.A. 223*, *J.A. 139*]. St. Paul's dispute regarding these documents is essentially that a limited agency relationship was created in these cases for the sole purpose of addressing the pending issues.

Viewing the aforementioned facts in a light most favorable to St. Paul, it is clear that St. Paul and Red Canyon share a relationship that reaches beyond the parameters of a "contractual, arms-length transaction." Rather than supplement the record with documentation of Red Canyon's ownership structure, St. Paul appends an affidavit to its opposition refuting the agency relationship. As previously noted, however, a non-moving party cannot create a genuine dispute simply by offering a conclusory, self-serving affidavit that is without corroboration. [*J.A. 302* (citing *Nat'l Enters.*, 201 F.3d at 335, and *Evans*, 80 F.3d at 962)]. St. Paul's affidavit contradicts itself and is an attempt to contradict the sworn statement of Mr. Sheikh [*S.A. 6-8*] and the other documentation mentioned above. As a matter of law, St. Paul's affidavit is insufficient to create a genuine issue of material fact as to whether Red Canyon acted on behalf of St. Paul in entrusting the property to Bradford.

*J.A. 306-08*.

In arguing that a genuine of issue of material fact existed on this point, Br. at 12, 25-33, the Insured does not address the District Court's actual reasoning, the undisputed facts on which the District Court relied, or the line of authority that the District Court cited. This fundamental failure is not one that the Insured can correct on reply. *Supra* § I.A.

b.    *The Insured's Arguments Regarding Actual Authority*

Rather than confront the District Court's holding, the Insured engages in an off-point discourse on agency and corporate law. Br. at 25-33. The Insured did not actually raise its arguments (or authorities) regarding Maryland agency law until its motion to alter or amend the judgment, the denial of which the Insured does not challenge on appeal. *Supra* § I.A; *compare J.A. 254-57* (contending, in summary judgment opposition, only that Insured and Red Canyon were separate entities), and *J.A. 320-23* (first raising, in Rule 59(e) motion, arguments and authorities raised in Br. at 30-33).

The Insured's failure to challenge the denial of its Rule 59(e) motion, much less to assert an abuse of discretion, is alone sufficient to defeat its citation to Maryland agency law. In any event, none of these legal citations address (or overcome) the actual summary judgment record in this case.

The record was replete with documentary evidence that Sheikh and Red Canyon had actual authority to act on behalf of the Insured. *See Ins. Co. of N. Am. v. Miller*, 765 A.2d 587, 594 (Md. 2001) (holding party to judicial admissions in other lawsuit regarding agency relationship); *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1047-48 (Md. 1999). Although "each member is an agent of the limited liability company for the purpose of its business," Md. Code, Corps. & Ass'ns § 4A-401(a), persons other than members may be agents of the LLC. A "limited

liability company has the general powers, whether or not set forth in its articles of organization or operating agreement, to … (11) Elect or appoint agents and define their duties and fix their compensation[.]" Md. Code, Corps. & Ass'ns § 4A-203. *See* N.Y. Ltd. Liab. Co. Law § 202(h). Moreover, an LLC is expressly authorized to act as agent of another LLC. Md. Code, Corps. & Ass'ns § 4A-203(13). An LLC, like a corporation, generally can act only through natural persons serving as its agents. Md. Code, Bus. Occ. & Prof. § 10-206(b)(4); *Estate of Collins v. Geist*, 153 P.3d 1167, 1173 (Idaho 2007); *Winzer v. EHCA Dunwoody, LLC*, 627 S.E.2d 426, 430 (Ga. Ct. App. 2006).

Given the extensive record evidence of Sheikh and Red Canyon's agency for the Insured, Circuit precedent precluded the Insured from nakedly asserting a "contractual, arms-length" relationship between itself and Red Canyon without actually producing its contract with Red Canyon or documentation of the LLCs' ownership structures. In an action against the assignees of a note, this Court found that the assignees could not defeat summary judgment by merely describing (allegedly breached) terms of their repurchase agreement: "[A]ppellants have not produced the repurchase agreements in question. [Their] self-serving affidavit describing the content of the repurchase agreements is not enough to defeat [the] motion for summary judgment. *Nat'l Enters*, 201 F.3d at 335 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)

(to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor)). Rule 56(c)(4) requires the non-movant to adduce admissible evidence, and the "best evidence" rule requires that, subject to exceptions that do not apply in this case, the content of a writing be proved through admission of the writing itself. Fed. R. Evid. 1002, 1003, 1004.

Farooq did not even have corroboration from Sheikh regarding the alleged limitations on Sheikh's authority to act on its behalf. Even by Farooq's account, Sheikh always had been willing to provide affidavits for the Insured and Farooq's other LLCs. *J.A. 279-80* (addressing *J.A. 139-40* and *J.A. 129*). Sheikh's availability was not an issue. The Insured's verified interrogatory responses, executed by Farooq under penalty of perjury on October 21, 2011 (*J.A. 207*), listed Ibrahim Sheik as a person likely to have knowledge of the facts alleged in the Insured's complaint. *J.A. 192-93.* Farooq represented that Sheikh's address was the Land Bank Building: "2315 St. Paul Street, Baltimore, MD 21218." *J.A. 193.*[2]

Despite Sheikh's presence on the Insured's premises, the Insured did not procure an affidavit from Sheikh or (if a genuinely arms-length relationship existed) subpoena him for deposition. Nor did the Insured, in opposing summary judgment, request further discovery pursuant to Fed. R. Civ. P. 56(g). At no point

---

[2] By contrast, Farooq, on behalf of the Insured, listed only a "[l]ast known address" for Bradford (*J.A. 194*) and for Osorio (*J.A. 196*).

has the Insured explained its failure to corroborate Farooq's conclusory affidavit with testimony from Sheikh, with documentation of the LLCs' structure, with the contract between the Insured and Red Canyon, or with any documentation of the limitations allegedly placed on Sheikh's authority.

Notably, after the District Court's summary judgment opinion identified the gaping holes in the Insured's opposition materials, the Insured did attempt to supplement the record by way of a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment. *J.A. 315-407*. But the Insured still did not attach testimony from Sheikh, documentation of the LLCs' structure, the contract between the Insured and Red Canyon, or any documentation of the limitations allegedly placed on Sheikh's authority. *Id.* Rather, Farooq submitted a supplemental affidavit—with additional undocumented, conclusory statements—plus four years of his personal tax returns. *J.A. 327-407.*[3] Since the Insured does not challenge the denial of its Rule 59(e) motion, those materials are significant only in demonstrating that the Insured's failure to properly oppose Hartford's motion did not result from some

---

[3] Farooq's supplemental affidavit raised more questions than it answered. He claimed that Red Canyon was owned and controlled by his mother, and that he had signed documents from time-to-time on behalf of Red Canyon "[b]ecause I am her son[.]" *J.A. 328.* But Farooq submitted no corroboration from his mother. And Farooq's lack of income from Red Canyon—assuming he was being truthful to the Internal Revenue Service—does not mean that he lacked agency to act on behalf of Red Canyon.

mere misunderstanding of its obligations under Rule 56. The Insured either lacks any such corroboration or is hiding the ball.

The Insured repeatedly proved below that it was unable to demonstrate, through evidence as would be admissible at trial, the existence of a genuine issue of material fact. Absent more than some mere "scintilla of evidence" for the Insured's position, *Anderson*, 477 U.S. at 252, the District Court properly granted summary judgment.

c. *Alternatively, Sheikh's Apparent Authority*

Alternatively, even if the Insured had preserved its argument under Maryland agency law, and even if the Insured had produced documentation of the relationship among Farooq, Sheikh, Red Canyon, and the Insured, the record would conclusively establish Sheikh's apparent authority to speak on behalf of the Insured.

"The use of [a third party's] address in the declarations page, indeed under the heading 'Mailing Address,' indicates the parties' mutual intent to use that address as [the policyholder's] mailing address." *Anderson v. Gen. Cas. Ins. Co.*, 935 A.2d 746, 752 (Md. 2007). A policyholder's designation of a third-party's address as its mailing address thus gives that third-party actual authority to receive policy notices. *Id.* at 752-53.

One such policy notice was Hartford's EUO letter of May 27, 2008. *See* Facts § A.3. Hartford addressed that letter to "Mr. Ibrahim Sheikh, 2315 St. Paul Street, LLC c/o Red Canyon Properties," *J.A. 213*. The letter stated: "Pursuant to the terms of **your insurance policy** Hartford has requested that we conduct your examination under oath." *J.A. 213* (boldface added). Hartford requested that Sheikh bring key documents to the EUO "consistent with **your duties** under the relevant insurance policy." *Id.* (emphasis added). Since the Insured, not Sheikh personally, is the policyholder with duties under the Policy, the letter unambiguously sought to examine Sheikh in his capacity as the Insured's representative. The Insured in fact received this letter, which appeared in the Insured's own file, as produced in discovery. *See* Facts § A.2.

By designating Red Canyon as its agent to receive policy notices, by receiving the notice requesting an EUO "[p]ursuant to the terms of your insurance policy," and then by permitting Sheikh to testify without communicating to Hartford any limitations on Sheikh's authority, the Insured clothed Sheikh with apparent authority to speak on its behalf. An "'apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.'" *Green*, 735 A.2d at 1048 (quoting Restatement (Second) of Agency § 12 (1958)). "'Apparent authority results from certain acts or manifestations by the alleged principal to a third party leading the third party to

believe that an agent had authority to act.'" *Dickerson v. Longoria*, 995 A.2d 721, 735 (Md. 2010) (quoting *Klein v. Weiss*, 395 A.2d 126, 140 (Md. 1978)). The information establishing the apparent authority "may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority **through authorized or permitted channels of communication**." Restatement (Second) of Agency § 27 cmt. a (1958) (emphasis added).

There is no question in this case that Hartford used "'reasonable diligence and prudence'" in concluding that Sheikh had authority to speak. *Dickerson*, 995 A.2d at 735 (quoting *P. Flanigan & Sons v. Childs*, 248 A.2d 473, 477 (Md. 1968)). Red Canyon was the designated point of contact with Hartford, and Farooq (who was out of the country) has never suggested how Hartford might have discovered any limitations on Sheikh's authority. Indeed, Sheikh testified that Mr. Weber was the attorney for both him and Farooq—a fact Farooq has never contested—and Mr. Weber did not correct any of the alleged misstatements. *See* Md. R. Prof'l Conduct 3.3, 4.1. On the uncontested facts, even assuming the truth of Farooq's allegations regarding Sheikh's scope of actual authority, Sheikh had apparent authority to testify on behalf of the Insured.

d.  *Irrelevancy of Insured's Contentions Under Actual Policy Language*

Alternatively, even if one were to accept the Insured's conclusory allegations, those allegations are not material to the application of the exclusion. When an insured entrusts property to a person who then entrusts the property to a third party who steals the property, the exclusion bars coverage for the theft. *Methodist Health Sys. Found., Inc. v. Hartford Fire Ins. Co.*, 834 F. Supp. 2d 493, 498 (E.D. La. 2011) (holding that an entrustment exclusion applied even though the theft was twice removed from the insured's initial investment of money in a mutual fund) (citing *David R. Balogh, Inc. v. Pa. Millers Mut. Fire Ins. Co.*, 307 F.2d 894, 896 (5th Cir. 1962) (court denied coverage under an entrustment exclusion when a jeweler entrusted jewelry to a middleman who entrusted the jewelry to a prospective customer who ultimately stole the jewelry)).

This conclusion comports with the Policy language and Maryland law. Exclusion 2.h applies to "anyone else to whom you entrust the property for any purpose." *J.A. 77.* The Insured impermissibly asks this Court to insert the word "directly" before "entrust." Such *post hoc* rewriting of policy language is inconsistent with Maryland law generally, *see C & H Plumbing*, 287 A.2d at 239, and with the exclusion's purpose of shifting to the Insured the risk of theft by persons "would have more familiarity with the surroundings and, therefore, be better able to steal" from the premises. *Id.* at 241.

### 2.    Applicability of Exclusion to "the Property," Not Merely to "Chattel"

The Insured impermissibly asks this Court to rewrite Exclusion 2.h to replace "the property" with "chattel." None of the Insured's authorities adopts such a restrictive interpretation of such an exclusion, and its authorities contradict such an interpretation. *See, e.g.*, *F.D. Stella Prods. Co. v. Gen. Star Indem. Co.*, 2005 WL 3436388 (N.D. Ill. Dec. 12, 2005) (finding restaurant entrusted); *Wagner v. Edemnify, LLC*, 2009 WL 5062058, at *3 (E.D. Tex. Dec. 16, 2009) ("[B]y giving [the culprit] the key and alarm code, so that he could enter the building at any time without supervision, Plaintiff 'delivered' the contents of the building to him."); *cf. Cooney v. Nationwide Mut. Ins. Co.*, 2011 WL 198600, at *4 (Ohio Ct. App. Jan. 13, 2011) (assuming without deciding that delivery of warehouse key constituted entrustment of brass fittings inside).[4]

The Insured's effort to restrict the meaning of "the property" is reminiscent of the failed efforts of a policyholder to restrict the meaning of "employee" in

---

[4] The Insured relies heavily on *Cooney*. To the extent that an unpublished non-Maryland decision warrants consideration, *Cooney* is easily distinguishable. The policyholder occasionally gave an itinerant worker access to a warehouse to "get out of the cold." 2011 WL 198600, at *1. It was undisputed that the subject theft occurred on a day when the worker did not have a key and was not supposed to be in the warehouse. *Id.* at *4. And, in any event, *Cooney* relied on a principle of contract construction that Maryland has rejected. *Compare id.* at *3 (construing policy "strictly against the insurer"), *with Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1031 (Md. 1993) ("Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer.")

*C & H Plumbing*, *supra* § I.B. The exclusion addresses the increased risk of theft from a premises by persons who have "more familiarity with the surroundings and, therefore, [are] better able to steal" from that premises." *C & H Plumbing* 287 A.2d at 241. The Insured's unduly restrictive definition would contravene that purpose.

If the parties had intended to restrict the exclusion's application to "chattel," they would have used the word "chattel" instead of "the property." Hartford's Policy defined "Covered Property" by reference to the premises.

> a. Buildings and structures described in the Schedule and located at the premises specified in the Schedule in the course of construction, including the cost of labor and, if applicable, "earned profit" as specified in the construction contract. This includes foundations, underground pipes and wiring, machinery and fixtures, and similar property that has become or is intended to become a permanent part of the building(s) or structure(s).

*J.A. 73*. The other prongs of the definition of "Covered Property," applying to certain materials, supplies, and similar items, required that the item be "at the premises described in the Schedule" (prongs c, d, e, and f) or "intended to become a permanent part of the building(s) or structures" (prong b). *J.A. 73. See J.A. 81* (adding "existing structure(s) intended to become a permanent part of the completed project" to the definition of "Covered Property"). The Schedule specified the "Description and Premises of Construction" as follows: "RENOVATING THE PLUMBING AND ELECTRICAL AND ADDING

PARTITIONS TO A 69,000 SQUARE FOOT, SEVEN STORY, MASONRY NON-COMBUSTIBLE BUILDING LOCATED AT 2315 SAINT PAUL STREET, BALTIMORE, MD 21218." *J.A. 72.*

Further refuting the Insured's "chattel" argument, the exclusion refers to the entrustment of "the property," not "property." The presence or absence of the definite article in a private contract's description of property is significant. *Rossi v. Douglas*, 100 A.2d 3, 5 (Md. 1953) (Sobeloff, C.J.) (error to overlook conspicuous absence of definite article in lease). "The"—as opposed to "a," "an," or "any"—refers to a particular object previously described. *Id.*; *Evans v. Maryland*, 914 A.2d 25, 75 (Md. 2006) (statutory construction); *Wright v. Maryland*, 708 A.2d 316, 326 (Md. 1998) (statutory construction); *Patapsco Female Inst. v. Rock Hill Coll.*, 51 Md. 470, 471 (1879) (definite article in statute "manifestly ha[s] relation to something already defined"). The definite article "'the' is 'used … to indicate that a following noun … refers to someone or something that is unique.'" *Reid v. Angelone*, 369 F.3d 363, 367 (4th Cir. 2004) (quoting Webster's Third New Int'l Dictionary 2368 (1981)) (alterations in *Reid*). When Exclusion 2.h used the definite article in referring to "the property," it necessarily referred to the insured premises.

A Maryland court has "no right to relieve one of the parties from disadvantageous terms by process of interpretation nor may we make a new

contract under guise of construction." *C & H Plumbing*, 287 A.2d at 239. The District Court correctly rejected the Insured's effort to rewrite the exclusion to apply only to "chattel."

### 3. Entrustment of the Building to Bradford

Under the principles of Maryland law discussed in the previous section, the Insured manifestly entrusted the Land Bank Building to Bradford. Just as *C & H Plumbing* looked to dictionary definitions of "employee," 287 A.2d at 241, the District Court here "adopt[ed] the definition of 'entrust' as 'to confer trust upon; deliver something to (another) in trust. [T]o commit or surrender to another with a certain confidence regarding his care, use or disposal.'" *J.A. 308* (quoting Webster's Third Int'l Dictionary 759 (1993)). *See id.* (citing *Woldford v. Landmark Am. Ins. Co.*, 474 S.E.2d 458, 462 (W. Va. 1996) ("'[E]ntrust' means 'to commit or surrender to another with a certain confidence regarding his care, use, or disposal of.'"), and *Cougar Sport, Inc. v. Hartford Ins. Co. of the Midwest*, 737 N.Y.S.2d 770, 773 (App. Div. 2000) ("In using the word 'entrust,' the parties in this case 'must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient.'")); *F.D. Stella*, 2005 WL 3436388 at *5; *Wagner*, 2009 WL 5062058, at *3.

The Insured, in arguing that Bradford violated alleged restrictions on his use of the property, ignores the policy language, which applies to "anyone else to whom you entrust the property **for any purpose**," *J.A. 77* (emphasis added), and the undisputed record evidence cited by the District Court:

- "First, Mr. Sheikh testified under oath that prior to hiring Bradford, he sought the referral of a colleague because he wanted to hire a subcontractor he could trust." *J.A. 308-09* (citing *S.A. 19-22*).

- "Second, Mr. Bradford received a set of keys to the property and often worked unsupervised." *J.A. 309* (citing *S.A. 33-35*).

- "Third, within a few weeks of hiring Bradford, Mr. Sheikh traveled out of the country, leaving Bradford with the keys and unfettered access to the property." *Id.* (citing *S.A. 35-36*).

- "Finally, the first contract Bradford signed required Bradford to take 'reasonable steps to secure the Property against casualty, loss and vandalism including, but not limited to, locking all external doors and closing and locking all windows when not physically present at the Property.'" *Id.* (citing *J.A. 215*).

The Insured does not even acknowledge the dispositive evidence that the District Court cited. Br. at 29-30. Its essential theory is that Bradford, during the extensive time when he had unsupervised access to the Land Bank Building,

exploited the trust placed in him to refrain from entering certain parts of the building that were accessible with the key but ostensibly "off limits" to him. By the Insured's argument, the fact that an employee or contractor violated a policyholder's instructions would render the exclusion inapplicable—thereby transforming the policy into a fidelity bond. The Insured's contentions violate "the doctrine of avoiding absurd results." *Howell v. Harleysville Mut. Ins. Co.*, 505 A.2d 109, 113 (Md. 1986). *See also Wagner,* 2009 WL 5062058, at *4 (recognizing implicit rejection of such a position in *David R. Balogh*, 307 F.2d at 897). The risk of an employee or contractor breaching the trust placed in him—by stealing from a premises with which he has gained familiarity through such trust— is the precise risk for which Exclusion 2.h bars coverage. *Supra* § I.B.

### 4.    Bradford's Responsibility for the Loss

Finally, the Insured speculates that perhaps someone other than Bradford committed the theft. This speculation, depending on a purported distinction between legal responsibility and factual responsibility, founders on the unambiguous terms of the December 2007 contract. Bradford "accept[ed] **sole[ ]** responsib[ility] for damage … done to the Property," including various instances of "theft." *J.A. 217* (emphasis added). "Sole" responsibility is incompatible with the notion that some unidentified third party (who necessarily would also be responsible) committed the crime. Reinforcing that conclusion, the consideration

for the December 2007 contract included Red Canyon's agreement to "refrain from pursuing civil or **criminal sanctions** against Mr. Bradford." *Id.* (emphasis added).

Although Bradford, in an unsworn statement, later claimed not to have read the contract before signing, *J.A. 150*, the fact remains that Red Canyon, as the Insured's agent, prepared and signed that contract. *J.A. 218*. Whatever limits the Insured allegedly placed on Red Canyon's authority, the undisputed evidence is that Red Canyon (through counsel shared by the Insured and Red Canyon) drafted and executed the December 2007 contract at Farooq's direction. *S.A. 70-71*. The December 2007 contract thus operates as a party admission.

Even putting aside the December 2007 contract, the summary judgment record eliminated any genuine issue as to the culprit's identity. Based upon his personal knowledge regarding the circumstances of the entrustment of the building to Bradford, Sheikh, on behalf of the Insured, *S.A. 8*, testified at the EUO that he "continue[d] to believe that Mr. Bradford is responsible for all the damage." *S.A. 71-72.*[5]

And even if Sheikh's testimony were only as a witness rather than as a representative, Farooq's speculation cannot overcome the personal knowledge of both Sheikh and Osorio. From October 26, 2007 to November 20, 2007, the only

---

[5] Sheikh's belief that Bradford's employees assisted in the crime, *S.A. 72*, does not affect the analysis. Exclusion 2.h "applies whether the persons referred to above are acting alone or in collusion with others[.]" *J.A. 77-78.*

people with access to the building were Bradford and Osorio. *S.A. 13*; *S.A. 40*. Sheikh and Osorio testified under oath that Bradford had a key to the building, and that there were no signs of forcible entry. *S.A. 33*, *S.A. 40-41*; *S.A. 100*; *S.A. 107*. Osorio agreed with Sheikh "that Mr. Bradford and his employees did the damage to the Land Bank building," and that there was no "reason to believe that anyone else could have done any of the damage." *S.A. 127*.

Absent any evidence of forcible entry, the Insured offers no factual basis on which a jury reasonably could conclude that someone else could have committed the theft. Instead, in attempting to counter the testimony of two knowledgeable witnesses, Farooq professed a complete lack of personal knowledge regarding the circumstances of the loss. *J.A. 275-79*. Epitomizing his lack of personal knowledge, Farooq speculated, contrary to Sheikh's personal knowledge (*S.A. 72*) and the Insured's own complaint (*J.A. 12* (¶ 12)), that two separate thefts may have occurred in November 2007 and February 2008. *J.A. 276-77* (¶ 29). Farooq's affidavit is insufficient under Fed. R. Civ. P. 56(c) and Fed. R. Evid. 602, which required the Insured, if it wished to generate a genuine issue of material fact, to come forward with testimony from witnesses with personal knowledge.

The admissible evidence in the summary judgment record—from witnesses who had personal knowledge, who were authorized to speak on behalf of the Insured, or both—was that Bradford committed the crime, with no evidence that

anyone else could have been the culprit. The Insured did not produce any admissible evidence establishing that anyone else could have perpetrated the theft without forcibly entering the Land Bank Building. An "issue of fact must be genuine to preclude the grant of summary judgment and the non-moving party must do more than 'show that there is some metaphysical doubt as to the material facts.'" *Jackson*, 992 F.2d at 1323 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). This Court should affirm the grant of summary judgment for Hartford.

## II.    CONDITIONS OF COVERAGE

### A.    Standard of Review

Although the District Court declined to address whether the Insured's breach of policy conditions also barred coverage, *J.A. 302*, this Court may affirm on this alternative ground, briefed below. *Covenant*, 493 F.3d at 430; *Jackson*, 992 F.2d at 1322.

### B.    Examination Under Oath

According to the Insured, Sheikh presented false testimony at his June 20, 2008 EUO, and the Insured has never submitted to an EUO. *Compare J.A. 120* and *J.A. 276*, *with* Facts §§ A.3, B. The Policy's EUO clause, Supplemental Condition B.3.g, provides:

> You must see that the following are done in the event of loss or damage to Covered Property: …

> g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

*J.A. 69.* The Insured's sole theory for why it did not breach the EUO clause is that Hartford allegedly requested an EUO only of Sheikh individually, not of the Insured.

This contention cannot withstand reference to the actual record. *See* Facts § A.3. Red Canyon, as the "care of" party designated in the Policy's mailing address, held actual authority to receive all policy notices. *Supra* § I.C.1.c; *J.A. 50*; *Anderson v. Gen. Cas.*, 935 A.2d at 752. Hartford addressed its EUO letter of May 27, 2008 to "Mr. Ibrahim Sheikh, 2315 St. Paul Street, LLC c/o Red Canyon Properties," *J.A. 213*. Hartford requested the EUO "[p]ursuant to the terms of your insurance policy," and requested documents "consistent with your duties under the relevant insurance policy." *Id.* This letter, which the Insured produced in discovery from its own files, *see* Facts § A.2, unambiguously sought to examine Sheikh in his capacity as the Insured's representative.

Summary judgment for an insurer on an EUO clause is appropriate if the insured fails to answer relevant, material questions. *Phillips v. Allstate Indemn. Co.*, 848 A.2d 681, 690 (Md. Ct. Spec. App. 2004) (following *Powell v. U.S. Fid. & Guar. Co.*, 88 F.3d 271, 272-73 (4th Cir. 1996)). Here, the Insured has never disputed (and cannot dispute) that the EUO questions were relevant and material. If

the Insured somehow could avoid Sheikh's statements, *supra* § I.C.1, it would thereby establish a material breach of its obligation to submit to an EUO, rendering summary judgment appropriate on that ground.

### C.    Notice to the Police and Hartford

#### 1.    Undisputed Decision by Insured Not to Provide Notice in 2007

Supplemental Conditions B.3.a-c of the Policy provide:

You must see that the following are done in the event of loss or damage to Covered Property:

a.  Notify the police if a law may have been broken.[6]

b.  Give [Hartford] prompt notice of the loss or damage. Include a description of the property involved.

c.  As soon as possible, give [Hartford] a description of how, when and where the loss or damage occurred.

*J.A. 69.*

The Insured does not (and cannot) contest Farooq's personal involvement in the 2007 decision not to report the claim to the police or Hartford. *See J.A. 69* (requiring that the Insured "must see that the following are done"). Sheikh testified that Farooq and Sheikh made that decision in consultation with their counsel.

---

[6] The Insured argued below that Condition B.3.a contained no time element. Even putting aside the absurdity of the notion that the Insured could satisfy this obligation by notifying the police months or years after the fact, Hartford could have notified the police, or directed the Insured to do so, in November 2007 if the Insured had promptly reported the loss to Hartford.

*S.A. 70-71.* Farooq does not dispute that portion of Sheikh's testimony. *J.A. 274-80*.

### 2.     Insufficiency of Excuse for Failure to Provide Notice in 2007

The Insured argued below, without authority, that it had no notice obligations until it realized that the loss exceeded its $10,000 deductible. But the policy requires notice "in the event of loss or damage," *J.A. 69*, without reference to the policy deductible. Courts have rejected such efforts to rewrite the policy language. *See Hartford Fin. Servs. Group, Inc. v. Cleveland Pub. Library*, 168 F. App'x 26, 34 (6th Cir. 2006) ("[T]he idea that [the insured] had no duty to report any losses that amounted to less than its deductible is simply not tenable. Furthermore, the policy language at issue here requires [the insured] to give 'immediate written notice to [Hartford] of any loss.' The ordinary meaning of 'any loss' is certainly not 'any loss above and beyond the amount an insured would have to pay as a deductible.'"); *Plantation Pipeline Co. v. Royal Indem. Co.*, 537 S.E.2d 165, 167-69 (Ga. Ct. App. 2000); *Edwards v. Ranger Ins. Co.*, 456 S.W.2d 419, 421 (Tex. Civ. App. 1970); *cf. Lewis v. Commercial Cas. Ins. Co. of Newark, N.J.*, 121 A. 259, 261 (Md. 1923) ("The meaning of the word 'loss,' as used in the [notice] clause under construction, is the injury or damage caused by the accident for which the insurer may, under the provisions of the policy be liable, *though at such time the extent of the loss may not be ascertainable*.") (emphasis added).

Any failure to discover the extent of the loss in 2007 was the Insured's fault. No further loss occurred between November 2007 and March 2008. *Supra* § I.C.4; *S.A. 72*. According to Sheikh's sworn testimony, Farooq and Sheikh decided not to report the loss in November 2007, and instead to arrive at an agreement with Bradford, because they had not yet discovered the scope of the theft. *S.A. 70-71*. But the December 20, 2007 contract, drafted by Farooq and Sheikh's counsel, expressly recognized that investigation could reveal a greater scope of loss: "This is not an inclusive list, **further damage could be discovered**." *J.A. 217* (emphasis added). This express contemporaneous acknowledgment of a possibly larger claim defeats the Insured's after-the-fact excuse. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1194 (Md. Ct. Spec. App. 1997) ("an insured's notice obligation accrues when the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim"); *Plantation Pipeline*, 537 S.E.2d at 167-69.[7]

### 3.    Prejudice to Hartford

The Maryland Court of Appeals has never affirmatively held that, in the context of a first-party policy, an insurer must prove prejudice based on an

---

[7] Even under excess policies specifically requiring notice only when a claim is "likely" to implicate coverage, *CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 497 & n.2 (D.C. Cir. 1996), the "court must inquire as to when a reasonable [policyholder], **knowing everything that the [policyholder] in this case knew or should have known**, would give notice." *Id.* at 481 (emphasis added).

insured's failure to provide notice. *Himelfarb v. Hartford Fire Ins. Co.*, 718 A.2d 693, 697 (Md. Ct. Spec. App. 1998), *aff'd*, 736 A.2d 295 (Md. 1999). The Court of Appeals has adopted such a prejudice requirement as a matter of common law in the context of a third-party liability policy, without specifying whether that holding extended to first-party policies. *Prince George's Cnty. v. Local Gov't Ins. Trust*, 879 A.2d 81, 96-97 (Md. 2005). Because prejudice exists as a matter of law in this case, Hartford—so as not to complicate this straightforward appeal by asking this Court to make an "*Erie* guess"—assumes, purely for purposes of this appeal, that Maryland law requires a showing of prejudice.

"[S]howing 'actual prejudice' does not require the insurer to 'prov[e] a negative,'" or to demonstrate precisely what evidence or opportunities it lost as a result of the late notice. *Prince George's Cnty. v. Local Gov't Ins. Trust*, 859 A.2d 353, 361 (Md. Ct. Spec. App. 2004) (quoting *Washington v. Fed. Kemper Ins. Co.*, 482 A.2d 503 (Md. Ct. Spec. App. 1984)), *aff'd*, 879 A.2d 81 (Md. 2005). In the same decision adopting a common-law prejudice requirement under a liability policy, the Court of Appeals adopted a line of authority finding prejudice as a matter of law where the policyholder failed to provide notice until after resolution of the underlying claim by judgment or settlement. *Prince George's Cnty.*, 879 A.2d at 98-99 (collecting cases). *See id.* at 100 ("The [policyholder] may be correct that the attempts of the [insurer] to criticize particular trial choices made by the

[policyholder] and to argue that those choices increased the judgment represent '20/20 hindsight.' The [policyholder], however, put the [insurer] in the position of proving a negative and speculating about what could have been.").

Here, when asked whether "you understand that if you had contacted your insurance company immediately after discovery of the loss that Hartford would have had an opportunity to evaluate the scope of the loss for itself," Sheikh acknowledged "I do." *S.A. 72.* He disputed prejudice to Hartford only by insisting that nothing changed between initial discovery of the loss in November 2007 and notice to Hartford in March 2008. *Id.* But, for two main reasons, the prejudice goes much deeper than whether the loss remained subject to inspection.

First, that four-month lapse in notice to Hartford and the police harmed any potential effort to recover the stolen items, which included distinctive finishes. Sheikh went so far as to decline Bradford's invitation to return a hose because "I told him that we have already started the claim process, and I don't know what type of hose he was bringing." *S.A. 63.* Fire hoses were among the items stolen from the Land Bank Building. *J.A. 12* (Complaint ¶ 12); *J.A. 217* (noting "theft and damage to fire suppression system" in December 20, 2007 contract). *See also J.A. 153* (Hartford's adjuster saw fire hoses in Bradford's driveway matching description of stolen hoses); *J.A. 169* (not disputing authenticity of Hartford's claim file).

Hartford was without the aid of the Baltimore City Police, who could have aided in any timely efforts to recover the stolen property. Sheikh acknowledges that, following his initial report of theft to the police in March 2008, the police never followed up with him. *S.A. 52*. These admissions demonstrate precisely how the Insured placed Hartford in the position of "proving a negative and speculating about what could have been," as suffices to establish prejudice under Maryland law. *Prince George's Cnty.*, 879 A.2d at 100.

Indeed, when Hartford investigator Robert Almon met with Detective Nice of the Baltimore City Police Department on May 16, 2008, Detective Nice reviewed the December 20, 2007 contact. *J.A. 154*. Mr. Almon's notes summarize the conversation: "Due to the language in the contract the police will not prosecute or become involved in the incident. Their interpretation is that insured had forfeited rights to prosecute and their remedy is to move forward with civil action as Bradford failed to take the corrective action." *Id.*[8]

---

[8] The Insured did not (and could not) assert a hearsay objection as to this statement by the police. *J.A. 267*. *See J.A. 259-60* (asserting hearsay objections only as to other evidence). Police descriptions of why they did or did not investigate a matter are ordinarily not hearsay. *United States v. Cruz-Diaz*, 550 F.3d 169, 176 (1st Cir. 2008); *Suggs v. Stanley*, 324 F.3d 672, 681 (8th Cir. 2003); *United States v. Wilson*, 107 F.3d 774, 780 (10th Cir. 1997). Rather, the Insured contended that "[w]hether that is true or not, the fact remains that no rights of Hartford were impaired as a result," and that any interference with Hartford's ability to recover the stolen property was the fault of Red Canyon, not the Insured. *J.A. 267*. But Farooq was involved in the decision not to report the claim to Hartford or the

Second, if the Insured were to succeed in generating doubt as to the thief's identity, the delay in notifying Hartford or the police necessarily prejudiced Hartford's inquiry. The Insured, in arguing that Bradford's acceptance of sole responsibility was ambiguous, argues that doubt exists regarding the thief's identity because Bradford was never convicted of the theft. *See* Br. at 37 ("At no point has Mr. Bradford admitted to the allegations or been adjudicated as having committed the acts."). But, as just discussed, the delay in notice hindered any attempt to convince the police, and therefore prosecutors, to pursue criminal charges against Bradford. The Insured's actions and omissions during the four months between the theft and prejudiced Hartford's investigation and recovery efforts as a matter of law.

## III.  CLAIM UNDER "GOOD FAITH" STATUTE

### A.    <u>Standard of Review</u>

The Insured has not preserved for review, by any standard, its single-sentence claim that the Court should revive the Insured's statutory claim for breach of the duty of good faith. Br. at 40. This assertion, which does not appear in the Insured's statement of the issues, Br. at 2, and which lacks any citation to the record or to law, is insufficient to preserve any such challenge for review. Fed. R. App. P. 28(a)(5), -(9)(A); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6

---

police, and Farooq and Sheikh's attorney drafted the December 20, 2007 agreement. *S.A. 70-71.*

(4th Cir. 1999). On the merits, the Court may affirm below based on any grounds apparent from the record. *Supra* § II.A.

## B.    <u>Failure on the Merits</u>

The District Court correctly held that, because Hartford did not breach the Policy, the claim under the Maryland "good faith" statute automatically failed as well. *J.A. 312. See* Md. Code, Cts. & Jud. Proc. § 3-1701(e). The record also establishes alternative grounds for affirmance.

The Insured's burden of demonstrating bad faith is all the higher after Hartford prevailed below. The Insured makes "the sort of argument that calls into question the *bona fides* of all other contentions. How can an insurer exhibit 'bad faith' by taking a position that not only follows the policy's language but also is endorsed by a district judge?" *Westfield Ins. Co. v. Sheehan Constr. Co., Inc.*, 564 F.3d 817, 820 (7th Cir. 2009).

The Insured does not even cite the statute on which it bases its claim. It bears the burden of establishing the absence of "good faith," defined as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Md. Code, Cts. & Jud. Proc. § 3-1701(a)(4). The record reflects an extensive investigation by Hartford, *J.A. 84-95*, *J.A. 141-67*, *J.A. 180-89*, *S.A. 1-132*, made all the more difficult by the Insured's actions and omissions. *Supra* § II.

The Insured, which has never contended that more discovery was needed to support its claims, offers mere speculation,[9] without ever explaining why Hartford should have disbelieved Sheikh's testimony during its investigation.

The real question at this point is whether the Insured should face Fed. R. Civ. P. 56(h) sanctions for offering Farooq's affidavit in bad faith. *See J.A. 6* (pending motion). The Court should affirm the District Court's dismissal of the Insured's claim of failure to act in good faith.

---

[9] Earlier this week, the Maryland Insurance Administration, which has original jurisdiction over most claims under the first-party "good faith" statute, *see* Md. Code, Cts. & Jud. Proc. § 3-1701(c), issued an opinion rejecting a theory quite similar to the Insured's here. *W.K. & E.K. v. Encompass Indem. Ins. Co.*, Case No. 27-1001-13-00002 (Md. Ins. Adm. Apr. 29, 2013), available at http://www.mdinsurance.state.md.us/sa/documents/13-00002-Decision.pdf. In *W.K.*, it was undisputed that the insurer's original adjuster informed the policyholders that coverage existed for the loss, and in fact issued a payment. *Id.* at 6. Subsequent adjusters determined, in declining not to pay a supplemental claim, that upon further investigation coverage did not in fact exist for the loss. *Id.* at 4, 7-8. The Administration found that, absent any detrimental reliance by the policyholders, the claim under the "good faith" statute failed. *Id.* at 14-16. Here, the Insured, which did not produce any testimony from any witness with personal knowledge, did even provide any evidentiary support for its similar allegations. *Compare J.A. 15-16*, *with J.A. 274-82*. Indeed, the first adjuster in this case specifically reserved all rights and made no representations as to coverage. *J.A. 281-82*.

**CONCLUSION**

This Court should affirm the judgment below.

Respectfully submitted:

 /s/ *Steven M. Klepper*
Steven M. Klepper
Mary Beth Smith
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, MD 21202
(410) 752-6030
Email:  sklepper@kg-law.com
        msmith@kg-law.com

*Counsel for Appellee Hartford Fire*
*Insurance Company*

## STATEMENT RESPECTING ORAL ARGUMENT

This appeal does not warrant oral argument under Fed. R. App. P. 34(a)(2). Where an appellant fails to address the actual basis for the decision below, this Court typically affirms without oral argument. *Supra* § I.A.

*C & H Plumbing* already addressed the principles governing application of Exclusion 2.h. *Supra* § I.B. Nationwide, the meaning of "entrust" within the exclusion has given rise only to a scattering of decisions, many unpublished. *Supra* § I.C.2-3; Br. at 20. A precedential decision interpreting "entrust" under Maryland law would not be of general public benefit.

Oral argument only will add to the attorney's fees and costs incurred by Hartford as a result of Farooq's bad-faith affidavit. Although Hartford has moved below to recover those attorney's fees and costs pursuant to Fed. R. Civ. P. 56(h), *see J.A. 6*, quick disposition without oral argument will partially mitigate that loss. There is uncertainty regarding the collectability of any award of attorney's fees. The docket in the Castle Sprinkler litigation, *see* Facts §§ A.3 and A.6, indicates difficulty in collecting on a $20,000 judgment against Red Canyon. *See* http://casesearch.courts.state.md.us/ (case ID 24C10003631) (showing no satisfaction of judgment, and showing orders for Sheikh and Mohammad to appear for garnishment proceedings).

 /s/ *Steven M. Klepper* 
Steven M. Klepper

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with: (1) the 14,000 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B), in that it contains 10,884 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional typeface using Microsoft Word in 14-point Times New Roman.

 /s/ *Steven M. Klepper*
Steven M. Klepper

# CERTIFICATE OF SERVICE

I hereby certify that, on May 2, 2013, I filed the foregoing brief with the Court's CM/ECF system, which will cause copies to be served electronically on Anthony G. Gorski, Esquire (agorski @richlaw.com), Counsel for Appellant.

 /s/ *Steven M. Klepper*
Steven M. Klepper